[No. A051970. First Dist., Div. Five. Oct. 3, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
HENRY A. MENDEZ, JR., Defendant and Respondent.

1774

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Mark S. Howell and Charles R. B. Kirk, Deputy Attorneys General, for Plaintiff and Appellant.

Eric Weaver, under appointment by the Court of Appeal, for Defendant and Respondent.

**OPINION**

**HANING, J.**—The People appeal an order denying their motion to vacate orders setting aside respondent Henry A. Mendez, Jr.'s, 1973 robbery conviction (Pen. Code, § 211),[1] substituting a misdemeanor grand theft conviction (§ 487), and sealing the records of the resultant misdemeanor conviction. The People contend the superior court lacked jurisdiction to reopen the 1973 conviction and to order the record sealed. We reverse.

### PROCEDURAL HISTORY AND FACTS

On January 12, 1973, respondent pled guilty to second degree robbery and was committed to the California Youth Authority (CYA). He was 19 years old at the time of the November 7, 1972, offense. In September 1975 he was honorably discharged from CYA, and in November 1975 the superior court issued an order, nunc pro tunc, setting aside the guilty plea as of February 2, 1973, dismissing the information and releasing him from all penalties and disabilities resulting from the offense. (Welf. & Inst. Code, § 1772.)

---

[1]Unless otherwise indicated, all further statutory references are to the Penal Code.

On November 22, 1989, respondent filed a "Petition to Seal Minor's Records of Misdemeanor Conviction in Criminal Court and Other Records of Offense" (§ 1203.45), and an "Application to Withdraw Misdemeanor Conviction After One Year Without Probation, to Dismiss the Case, and for Relief From All Penalties and Disabilities Resulting From Offense." (§ 1203.4a.) The petition and application were apparently never acted upon and the record shows a line drawn through the first page of each. On December 12, 1989, respondent filed a "Petition and Order for Release from Penalties and Dismissal Under [Penal Code section] 1203.4a" and a second "Petition and Order for Sealing of Record Under [Penal Code section] 1203.45 . . . ."

On December 21, 1989, respondent, his counsel and the Alameda County District Attorney stipulated that respondent's robbery conviction be vacated and a misdemeanor grand theft charge be substituted. The parties further stipulated that respondent could plead guilty to the misdemeanor and thereafter seek to have the misdemeanor record sealed pursuant to section 1203.45. On the same day the superior court approved the stipulation and ordered the misdemeanor record sealed. On January 18, 1990, the court issued another order granting respondent's petition to seal the misdemeanor record pursuant to section 1203.45.

On February 2, 1990, respondent filed a "Petition for Reduction of Felony to Misdemeanor Pursuant to the Provisions of Section 17 Penal Code," declaring that he had been convicted of section 487, subdivision 2, and the court ordered the offense reduced accordingly. On the same day the court signed another order sealing the record.[2]

On January 30, 1990, respondent received a gubernatorial pardon, except with respect to his right to possess a firearm.[3] A February 5, 1990, letter from the Governor to respondent stated, in relevant part: "You should understand, however, that this pardon does not seal your record but rather is merely added as another entry. You are still required to acknowledge your prior felony conviction(s)." An amended pardon was issued on May 2, 1990, making typographical changes only.

On September 14, 1990, seven months after the sealing order issued, the People filed a "Motion to Vacate Sealing and Other Orders," by which they

---

[2]The record does not reveal the reason for this second petition and order.

[3]The pardon refers to respondent's conviction of a felony involving use of a firearm. However, the record reflects that he was convicted of *second* degree robbery which, at the time of the offense, did not include robbery perpetrated by use of a dangerous or deadly weapon. (Former § 211a.) Additionally, there is no evidence that a firearm was involved in the commission of the offense. The record before us does not reveal that appellant was ever charged with use of a firearm in connection with the second degree robbery conviction. Use of a knife was alleged, but stricken by the court at the time appellant entered his original plea.

challenged the court's jurisdiction to vacate respondent's robbery conviction and substitute a misdemeanor, and to seal the records. The thrust of the People's objection is that respondent has applied for various peace officer jobs within the state, and the sealing order conceals his robbery conviction from the inquiring law enforcement agencies. Respondent has also apparently applied for relief from federal firearms restrictions.

The trial court denied the People's motion, but granted a stay of its challenged orders.

## Discussion

Assuming the validity of a final judgment of conviction, any entitlement to postconviction relief, and the form thereof, is governed by statute. Other than a gubernatorial pardon, the Legislature has established three avenues of postconviction relief from criminal convictions.

First, section 1203.4 permits convicted felons or misdemeanants who have been granted probation to petition the court for release from the penalties and disabilities resulting from the conviction after their probationary period has terminated. Under this procedure, the probationer withdraws his or her plea of guilty or nolo contendere and enters a plea of not guilty or, if convicted after a plea of not guilty, the court sets aside the verdict or judgment of guilt and, in either case, the accusatory pleading is then ordered dismissed. Thereafter, the probationer is released from the penalties and disabilities resulting from the conviction with certain exceptions pertaining, inter alia, to restrictions on ownership and possession of firearms (§ 1203.4, subd. (a)), and the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery. (§ 1203.4, subd. (a).)

Second, section 1203.4a provides similar relief for persons convicted of misdemeanors and not granted probation. Neither section 1203.4 nor section 1203.4a applies to persons convicted of felonies and committed to CYA. Postconviction relief for such persons is regulated by Welfare and Institutions Code section 1772.

Welfare and Institutions Code section 1772 provides that persons who have been honorably discharged from CYA may petition the court for release from all penalties and disabilities resulting from the offense for which they were committed, "including, but not limited to, any disqualification for any employment or occupational license, or both, created by any other provision of law. . . ." (Welf. & Inst. Code, § 1772, subd. (a).) Although persons

convicted of a felony and honorably discharged are disqualified from employment as peace officers of the state, a county, a city, or other political subdivision (Welf. & Inst. Code, § 1772, subd. (a); Gov. Code, § 1029), they may be employed as peace officers of the Department of the Youth Authority if (1) at least five years have passed since their honorable discharge, and they have had no misdemeanor or felony convictions except for traffic misdemeanors since being honorably discharged, or (2) they were employed as a peace officer by the Department of Youth Authority on or before January 1, 1983. (Welf. & Inst. Code, § 1772, subd. (b).)[4] Persons convicted of a felony, other than a felony punishable by death, who are honorably discharged from CYA, and demonstrate the ability to assist people in rehabilitation programs, may be employed as parole officers of the Department of Corrections or the Department of the Youth Authority, or in a county probation department if they have been granted a full and unconditional pardon for the felony for which they were convicted. (Gov. Code, § 1029, subd. (b).) However, Welfare and Institutions Code section 1772 does not release a person from the prohibition of section 12021, which prohibits persons convicted of a felony from owning or possessing a firearm.

Section 17 authorizes the trial court to reduce certain felonies to misdemeanors. Under subdivision (b) of section 17, the court may reduce a felony to a misdemeanor "[w]hen a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail . . . ." Under subdivision (c) of section 17, "[w]hen a defendant is committed to [CYA] for a crime punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, the offense shall, upon the discharge of the defendant from [CYA], thereafter be deemed a misdemeanor for all purposes." Robbery is not an offense "punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail . . . ." (§ 17, subd. (b).) ▮ Robbery is a straight felony, and section 17 does not authorize the reduction of straight felonies to misdemeanors (see *People* v. *Beebe* (1989) 216 Cal.App.3d 927, 930 [265 Cal.Rptr. 242]), nor does it, or any other statute, authorize the modification of a final conviction of robbery to one of grand theft.[5]

The power of the court to seal conviction records also derives solely from legislative authority. (*Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, 876

[4]In times of natural disaster or "similar public calamity," any person may be employed as a peace officer. (Gov. Code, § 1029, subd. (c).)

[5]We use the term "straight" felony to designate those felony offenses that are punishable only as felonies, i.e., by death or imprisonment in the state prison (§ 17, subd. (a)), as opposed to alternative felony/misdemeanors which are punishable, in the court's discretion, by imprisonment in the state prison or by fine or imprisonment in the county jail. (§ 17, subd. (b).)

[132 Cal.Rptr. 464, 553 P.2d 624]; *People v. Glimps* (1979) 92 Cal.App.3d 315, 321 [155 Cal.Rptr. 230]; *McMahon v. Municipal Court* (1970) 6 Cal.App.3d 194, 199 [85 Cal.Rptr. 782].) With certain exceptions, section 1203.45 permits the court to seal the misdemeanor record of a person who was under the age of 18 at the time the misdemeanor was committed (or under age 21 if the offense occurred prior to March 7, 1973) and who is eligible for or has received relief under section 1203.4 or section 1203.4a. No similar relief is provided for an adult felon or misdemeanant, or a juvenile honorably discharged from CYA after commitment for a straight felony.

Respondent contends that section 1203.4, subdivision (a) authorizes the trial court to grant him the relief he seeks in the interest of justice. Section 1203.4, subdivision (a), states, in pertinent part: "In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, *or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section,* the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty, or, if he or she has been convicted after a plea of not guilty; the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted . . . ." (Italics ours.)

■ In essence, respondent argues that the above emphasized language in section 1203.4 grants the trial court discretion to vacate judgments of conviction and to grant the relief he seeks in cases where the defendant was not admitted to probation. We disagree. Section 1203.4 applies only to that category of persons who have been admitted to probation and not committed to prison, CYA, or other state institutions. (See *People v. Morrison* (1984) 162 Cal.App.3d 995, 999 [208 Cal.Rptr. 800] [§ 1203.4 applies only to probationers and not defendants who have been found not guilty by reason of insanity] and *People v. Borja* (1980) 110 Cal.App.3d 378, 382-383 [167 Cal.Rptr. 813] [§ 1203.4 applies only to probationers and not to those discharged from parole].)

■ Because respondent was convicted of a straight felony, and committed to CYA, his entitlement to postconviction relief is governed by the

gubernatorial pardon authority (Cal. Const., art. V, § 8; § 4800 et seq.) and Welfare and Institutions Code section 1772. Neither section 17 nor section 1203.45 permits the relief granted in the instant case and there is no other controlling statutory authority. Therefore, the fact that respondent was convicted of robbery remains of record in the Department of Justice (Department) unless affected by the trial court's orders herein. (See 7 Ops.Cal.Atty.Gen. 272, 274 (1946).)

The People contend the court lacked jurisdiction to reopen respondent's 1973 conviction and to order the record sealed. They rely on cases which stand for the proposition that once a sentence is imposed and put into execution, the trial court is without jurisdiction to modify, amend or revise it in any way, with the exception of the correction of clerical errors. (*People* v. *Bozeman* (1984) 152 Cal.App.3d 504, 506-507 [199 Cal.Rptr. 343]; *People* v. *Roe* (1983) 148 Cal.App.3d 112, 116 [195 Cal.Rptr. 802]; *In re Eugene R.* (1980) 107 Cal.App.3d 605, 612 [166 Cal.Rptr. 219].) However, this is not a case of postconviction sentence modification; rather, it involves the court's power to change the offense of which the defendant was convicted, after his conviction had become final, and to seal records of convictions.

It is essential to distinguish between a court's lack of fundamental jurisdiction and a court's action taken in excess of jurisdiction, although the distinction is hazy. ■ " 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. . . .' " (*People* v. *Ruiz* (1990) 217 Cal.App.3d 574, 584 [265 Cal.Rptr. 886], quoting *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].)[6] An act in excess of jurisdiction is an act beyond the court's power as defined by statute or decisional rule. (*In re Bakke* (1986) 42 Cal.3d 84, 89 [227 Cal.Rptr. 663, 720 P.2d 11]; *People* v. *Beebe, supra,* 216 Cal.App.3d at p. 932; *People* v. *Jones* (1989) 210 Cal.App.3d 124, 135 [258 Cal.Rptr. 294].) An act beyond the court's fundamental jurisdiction is void and may be set aside, at any time. (*People* v. *Ruiz, supra,* at p. 584.) By contrast, an act in excess of jurisdiction is valid until set aside, and a party may be precluded from setting it aside, due to waiver, estoppel or the passage of time. (*Ibid.*) An act in excess of jurisdiction refers to "a case

---

[6]As examples of fundamental, or subject matter jurisdiction, *Abelleira* v. *District Court of Appeal, supra,* cites the following: "A state court has no jurisdiction to determine title to land located outside its territorial borders, for the subject matter is entirely beyond its authority or power. A court has no jurisdiction to adjudicate upon the marital status of persons when neither is domiciled within the state. A court has no jurisdiction to render a personal judgment against one not personally served with process . . . . A court has no jurisdiction to hear or determine a case where the type of proceeding or the amount in controversy is beyond the jurisdiction defined for that particular court by statute or constitutional provision." (*Id.,* at p. 288; internal citations omitted.)

where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Abelleira* v. *District Court of Appeal, supra*, at p. 288.)

■ *People* v. *Glimps, supra*, 92 Cal.App.3d 315 held that "[a] sealing order made without legislative authority is in excess of the court's jurisdiction. When this fact appears from the record, it is void and must be set aside on motion at any time after its entry by the court which made the order." (*Id.*, at p. 321; see also, *People* v. *Ruiz, supra*, 217 Cal.App.3d at p. 584.) We likewise conclude that the order sealing respondent's record was an act in excess of the court's jurisdiction. We reach the same conclusion regarding the order vacating respondent's robbery conviction and accepting his plea to grand theft.

■ Respondent concedes the court acted in excess of its jurisdiction in approving the stipulation, vacating the felony conviction and substituting the misdemeanor conviction, and sealing the record of the resulting misdemeanor conviction. However, both in response to the People's motion to vacate the court's orders, and on appeal, respondent argues that the People are estopped from challenging the court's actions in excess of its jurisdiction since the district attorney stipulated to the actions taken and the procedures embodied in the court's orders. The People contend they are not estopped from challenging the court's orders because the Department was not a party to the stipulation, and therefore cannot be bound by it.

Given that the trial court acted in excess of its jurisdiction in reducing respondent's felony conviction to a misdemeanor and sealing his conviction records, we must determine whether the People are estopped from challenging those orders because they stipulated to the procedure by which the court acted. ■ "When . . . the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.] Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when 'To hold otherwise would permit the parties to trifle with the courts.' [Citation.]" (*In re Griffin* (1967) 67 Cal.2d 343, 347-348 [62 Cal.Rptr. 1, 431 P.2d 625].) "On the other hand waiver of procedural requirements may not be permitted when the allowance of a deviation would lead to confusion in the processing of other cases by

other litigants. [Citation.]" (*People* v. *Ellis* (1987) 195 Cal.App.3d 334, 343 [240 Cal.Rptr. 708].)

The State Department of Justice is composed of the Attorney General and the Division of Law Enforcement. (Gov. Code, § 15001.) The Attorney General is charged with the supervision of district attorneys and the prosecution or assistance in prosecuting violations of law over which the superior court has jurisdiction. (Cal. Const., art. V, § 13; Gov. Code, § 12550.) Section 684 provides that "[a] criminal action is prosecuted in the name of the people of the State of California, as a party, against the person charged with the offense." ▇▇▇▇ Thus, the parties bound by the stipulation in the instant case are respondent and the State of California. The fact that the district attorney, rather than the Attorney General, entered into a stipulation on behalf of the People, is not determinative on the issue of whether the People are estopped from challenging the court's orders.

The People were a party to the stipulation below and were represented in court by the officer authorized to represent them. The People are ordinarily bound by their stipulations, concessions or representations regardless of whether counsel was the Attorney General or the district attorney. In this instance, however, there is good reason to permit the Attorney General to vacate the orders resulting from the stipulation. First, we recognize that the Department is ordinarily represented by the Attorney General on matters of this nature, and neither the department nor the Attorney General received actual notice of appellant's motions below. Second, we infer from the record that the Attorney General acted promptly once he became aware of the trial court's ruling. Finally, since we have concluded that the trial court acted in excess of its jurisdiction, and neither our research nor that of the parties has discovered any specific authority on this matter, it is appropriate to permit the Attorney General to intervene and seek appellate guidance.

Respondent relies on *People* v. *Beebe, supra,* 216 Cal.App.3d 927, wherein the trial court accepted a plea bargain which provided that if the defendant pled guilty to section 288, subdivision (a), his conviction would be reduced to a misdemeanor conviction of section 647a (now § 647.6) after he successfully completed probation. The defendant argued that because section 17 did not authorize reducing section 288, subdivision (a) to a misdemeanor, the court lacked authority to accept his plea and he was entitled to withdraw it. The Court of Appeal agreed the trial court had acted in excess of its jurisdiction, but held that the defendant was estopped from withdrawing his plea. (*Id.* at p. 932.) The court concluded that public policy dictated against permitting the defendant to withdraw his plea because he had the opportunity of contesting the charges, but nonetheless accepted a

plea agreement that benefitted him on the day of trial. Moreover, appellant's primary reason for withdrawing his plea stemmed from his stated belief that he might be found not guilty due to the prosecution's difficulty in proving its case at trial. The court found that such difficulty was due to delay resulting from the defendant's own action and concluded he was merely trifling with the court. (*Id.*, at p. 935.)

In the instant case we conclude it would be inappropriate to hold the People to a stipulation entered into by the district attorney under a significant misapprehension of the law, and which authorizes privileges exceeding those granted by the Legislature or the Governor's pardon, and not available to any other similarly situated person. In most instances, persons who have been convicted of a felony are precluded from owning or possessing firearms or serving as peace officers. (See §§ 1203.4, subd. (a), 12021; Gov. Code, § 1029; Welf. & Inst. Code, § 1772, subd. (a).) The policy behind such disqualification statutes is to assure against corruption and to engender the public's trust and confidence in their law enforcement system. (*Hetherington v. State Personnel Bd.* (1978) 82 Cal.App.3d 582, 590-591 [147 Cal.Rptr. 300].) ■ While the effect of a pardon is to restore civil and political rights (§ 4852.17), it does not obliterate the underlying record of conviction. (*People v. Norton* (1978) 80 Cal.App.3d Supp. 14, 19 [146 Cal.Rptr. 343].)

■ By virtue of a mistake of law by the district attorney, the court entered orders not permitted by statute or decisional law. We sympathize with respondent's reliance on the stipulation, and applaud his successful rehabilitation. However, the court's orders are not only in excess of its jurisdiction, but, we repeat, also contradict the terms of the Governor's pardon, violate a comprehensive statutory scheme for postconviction relief and afford privileges to respondent that are not available to other similarly situated persons. Under these circumstances we feel compelled to reverse. Respondent's situation is one for legislative redress. We know from the published appellate decisions and our common experience that the mere fact that one does not have a felony record does not ensure that he or she will not commit a public offense, and that many violent crimes are committed by persons with no prior criminal record. It is also a fact that many persons, such as respondent, who have suffered a single felony conviction but have taken positive steps to overcome it and built lives as law-abiding citizens, may be very good candidates for peace officer positions. Perhaps the Legis-

lature should take another look at those persons convicted of a single felony and who have become truly rehabilitated.

The order denying the People's motion to vacate is reversed, and remanded with directions to grant the motion.

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied November 4, 1991, and respondent's petition for review by the Supreme Court was denied January 8, 1992. Mosk, J., was of the opinion that the petition should be granted.