Filed 3/20/20; Certified for Publication 4/9/20 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FREDERIC CARL SANNMANN, | D075600 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2018-00003358-CU-WM-CTL) |
| DEPARTMENT OF JUSTICE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, John Meyer, Judge. Reversed.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Anthony R. Hakl and Maureen C. Onyeagbako, Deputy Attorneys General, for Defendant and Appellant.

Paul H. Neuharth, Jr., for Plaintiff and Respondent.

In 1997, Frederic Sannmann pleaded guilty to felony robbery (Pen. Code, § 211),[1] which rendered him ineligible to own firearms (former § 12021, now § 29800). In 2003, he successfully moved under section 1203.4, subdivision (a) (hereafter § 1203.4(a)) to set aside his conviction for *most* purposes. By statute, this relief did not restore Sannmann's right to own firearms. (§ 1203.4(a).) In 2011, Sannmann successfully moved—with the prosecutor's concurrence—to set aside the earlier set-aside order, to withdraw his 1997 felony guilty plea, and to instead plead guilty to misdemeanor theft (§ 487) nunc pro tunc to the date of his original plea. Sannmann immediately notified the California Department of Justice (DOJ) of these changes and the DOJ eventually updated its records accordingly. However, six years later, when Sannmann tried to buy a shotgun from a gun store, the DOJ blocked the purchase based on Sannmann's original 1997 felony conviction.

Sannmann filed a petition for writ of mandamus seeking an order directing the DOJ to release any holds on his ability to purchase firearms based on the 1997 felony conviction. The trial court believed it lacked the authority to determine the validity of the 2011 set-aside order entered by another superior court judge. Thus, finding Sannmann's record in the criminal case disclosed only a misdemeanor conviction (by virtue of the 2011 set-aside order), the court entered judgment for Sannmann and ordered the DOJ to release its hold on Sannmann's purchase.

---

[1] Further undesignated statutory references are to the Penal Code. Citations refer to the version of the statutes in effect at the time of the relevant event.

On appeal, the DOJ contends the trial court erred by awarding mandamus relief based on the 2011 set-aside order because the 2011 order was an unauthorized act in excess of the superior court's jurisdiction.  The DOJ does not otherwise seek in this appeal to invalidate the 2011 set-aside order.   For reasons we will explain, on the narrow issue before us, we agree the trial court erred by granting mandamus relief based on the 2011 set-aside order and reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The 1997 Guilty Plea*

In 1997, Sannmann pleaded guilty in case number SCD129922 (the criminal case) to robbery under section 211, a "straight felony."[2]  He was placed on three years' probation, subject to serving 365 days in jail and paying a fine.

### *The 2003 Set-aside Order*

In 2003, after completing his term of probation, Sannmann moved under section 1203.4(a) to set aside his 1997 guilty plea and conviction.  As it then existed, section 1203.4(a) stated in pertinent part:

> "In any case in which a defendant has fulfilled the conditions of
> probation for the entire period of probation, . . . the defendant
> shall . . . be permitted by the court to withdraw his or her plea of
> guilty . . . and enter a plea of not guilty; . . .  and . . . the court shall
> thereupon dismiss the accusations or information against the

---

[2]     A "straight felony" is an offense punishable only as a felony (i.e., by death or imprisonment in state prison).  (*People v. Mendez* (1991) 234 Cal.App.3d 1773, 1779, fn. 5 (*Mendez*).)  By contrast, a "wobbler" is an offense that is "chargeable or, in the discretion of the court, punishable as either a felony *or* a misdemeanor; that is, they are punishable either by a term in state prison or by imprisonment in county jail and/or by a fine." (*People v. Park* (2013) 56 Cal.4th 782, 789.)

3

defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted . . . .

"*Dismissal of an accusation or information pursuant to this section does not* [1] *permit a person to own, possess, or have in his or her custody or control any firearm capable of being concealed upon the person or* [2] *prevent his or her conviction under Section 12021.*"[3] (Italics added.)

The court granted Sannmann's motion, set aside his 1997 guilty plea, entered a plea of not guilty, and dismissed the accusatory pleading. Tracking the language of the statute, the court's order clarified that it "does not permit the defendant to own, possess, or have custody or control of any firearm capable of being concealed upon the person, and it does not prevent conviction of the defendant under [former section] 12021."

*The 2011 Set-aside Order*

In 2011, Sannmann filed another motion in the criminal case seeking to (1) set aside the 2003 set-aside order (thereby reinstating his 1997 robbery conviction by guilty plea); (2) withdraw his guilty plea to the robbery charge; and (3) enter a guilty plea to misdemeanor grand theft (§ 487) instead of robbery, nunc pro tunc to the original plea date in 1997. The prosecutor concurred in Sannmann's motion.

---

3    Former section 12021 made it a felony for any person previously convicted of a felony to own or possess "*any* firearm." (Former § 12021, subd. (a)(1), italics added.) The courts have held the Legislature's reference in this statute to "any firearm" prevails over the reference in section 1203.4(a) to firearms "capable of being concealed." (*People v. Frawley* (2000) 82 Cal.App.4th 784, 797 (*Frawley*).) There is no issue in this appeal regarding this apparent conflict, which was, in any event, resolved by a subsequent amendment to section 1203.4(a). (See Stats. 2003, ch. 49, § 1.)

4

The court granted Sannmann's motion and entered a minute order stating the following: "Defense motion to set aside previous plea withdrawn and [section 1203.4(a)] dated 11-10-03 is granted. [¶] Defendant now withdraws plea of PC211 [robbery] and enters guilty plea to PC 487 [theft] per [section] 17(b)[(4)] as [lesser included offense] of [count] 2 nunc pro tunc to 8-14-97."[4]

*Sannmann Notifies the DOJ of the 2011 Set-aside Order*

Two days after the court entered the 2011 set-aside order, Sannmann (through counsel) sent a letter to the DOJ's "Records Review Unit" enclosing and summarizing the order and requesting that the DOJ "update [its] records as appropriate." The letter did not indicate Sannmann was seeking to update his criminal history so that he could purchase a firearm.

After several exchanges of correspondence, none of which discussed firearms, the DOJ advised Sannmann in March 2012 that his "criminal history record [was] being amended to reflect the subsequent court dismissal" of the felony robbery conviction and the subsequent misdemeanor "conviction of the [section 487] charge." The DOJ provided Sannmann a copy of his amended criminal history reflecting these changes.

*The DOJ Blocks Sannmann's Attempted Gun Purchase*

Over five years later, in October 2017, Sannmann attempted to buy a shotgun at a gun store. While his purchase was pending approval, Sannmann received a letter from

---

4    Section 17, subdivision (b)(4) provides in part that a wobbler offense "is a misdemeanor for all purposes" when "the prosecuting attorney files in a court having jurisdiction over misdemeanor offenses a complaint specifying that the offense is a misdemeanor . . . ."

the DOJ's Bureau of Firearms stating his "purchase application is being denied" based on a prior felony conviction.

*Mandamus Proceeding*

Shortly after his purchase was blocked, Sannmann filed a petition for writ of mandate, the operative iteration of which sought an order "directing . . . that [the DOJ] release any holds upon [Sannmann]'s ability to purchase or own firearms that are based upon the [criminal case]."[5]

After the parties briefed the matter, the trial court heard and granted Sannmann's petition. The trial court explained, "[b]ased on a plain reading of the series of [o]rders issued in the [criminal] case, [Sannmann] pled guilty to a misdemeanor and judgment was entered on that plea. There is no felony plea or conviction." The court refused to invalidate the 2011 set-aside order for several reasons.

First, the court found it lacked the authority "to determine the correctness of another Superior Court judge's order."

Second, to the extent the court addressed the merits of the 2011 set-aside order, the court observed that Sannmann's 2011 set-aside motion "was brought under [section] 17," which authorizes trial courts to grant relief even after a case has been "dismissed" under a section 1203.4 set-aside order "[b]ecause 'a conviction which has been [set aside under section 1203.4] still exists for limited purposes, including . . . the denial of the right to

---

5    In his original petition, Sannmann also sought an order directing the DOJ "to accurately update its criminal history records for [Sannmann] to reflect a conviction of only Penal Code § 487 as a misdemeanor as of August 14, 1997." Sannmann abandoned this request in his operative amendment.

carry a concealable weapon . . . .' "  The trial court did not address the fact (discussed *post*) that section 17 applies only to wobbler offenses, and not to straight felonies.

Finally, after taking judicial notice of the file for the criminal case,[6] the trial court observed that the prosecutor "concur[red] with the defendant's plea," and "agreed with" and did "not appeal the Order."

The court later entered judgment in Sannmann's favor and ordered the issuance of a peremptory writ of mandamus commanding the DOJ "to release any hold upon . . . Sannmann's ability to purchase or own firearms that are based upon [the criminal case]."

## DISCUSSION

The narrow issue before us is the DOJ's contention that the trial court erred by issuing mandamus relief based on the 2011 set-aside order, which the DOJ maintains was an unauthorized act in excess of the superior court's jurisdiction in the criminal case.  As so framed, we agree.

"[E]ntitlement to postconviction relief" from "a final judgment of conviction . . . is governed by statute."  (See *Mendez*, *supra*, 234 Cal.App.3d at p. 1778; *People v. Barazza* (1994) 30 Cal.App.4th 114, 120-121.)  Generally speaking, section 1203.4 "is the only postconviction relief from the consequences of a valid criminal conviction available to a defendant" who was convicted of a felony and successfully completed probation. (*Barazza*, at pp. 120-121; see *People v. Chavez* (2018) 4 Cal.5th 771, 788.)

---

6     The criminal case file is not in the appellate record in this case.

Sannmann properly acknowledges the 2003 order granting him relief under section 1203.4(a) "did not restore his right to own a firearm." (See *Frawley*, *supra*, 82 Cal.App.4th at p. 797 ["persons granted relief under [section 1203.4] remain liable to prosecution under section 12021 for possession of any of the weapons proscribed by that section"].) Thus, for Sannmann's firearm rights to have been restored, the trial court, in issuing mandamus relief, must have correctly concluded that the 2011 set-aside order validly set aside the section 1203.4(a) relief and reduced Sannmann's felony robbery conviction to a misdemeanor theft conviction. We conclude the trial court erred in reaching this conclusion.[7]

The superior court's 2011 set-aside order purports to be based on two authorities: section 17, subdivision (b)(4) and the court's inherent authority to modify orders "nunc pro tunc." Neither ground authorized the superior court's order.

Section 17, subdivision (b) specifies the circumstances under which wobbler offenses are deemed misdemeanors rather than felonies. (§ 17, subd. (b) ["When a crime is punishable, in the discretion of the court, either [1] by imprisonment in the state prison or . . . [2] by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances . . . ."].) Subdivision (b)(4) of this section provides that a wobbler will be deemed a misdemeanor "[w]hen the prosecuting attorney files . . . a complaint specifying that the offense is a misdemeanor." (§ 17, subd. (b)(4).)

---

[7]     We recognize the trial court was in the untenable position of being asked to determine the validity of a fellow superior court judge's prior ruling.

Here, however, Sannmann was charged with robbery under section 211. "Robbery is a straight felony, and section 17 does not authorize the reduction of straight felonies to misdemeanors." (*Mendez, supra*, 234 Cal.App.3d at p. 1779; see *People v. Feyrer* (2010) 48 Cal.4th 426, 441-442 ["[S]ection 17, subdivision (b) applies solely to [wobblers]. . . . That statute does not confer upon the trial court the authority to reduce a straight felony to a misdemeanor."]; *People v. Mauch* (2008) 163 Cal.App.4th 669, 674 ["Absent alternate punishment authorized by statute, a trial court 'has no power to reduce a straight felony to a misdemeanor.' "]; *People v. Douglas* (2000) 79 Cal.App.4th 810, 813 [section 17 "does not allow a court to reduce a straight felony to a misdemeanor"].) Thus, section 17, subdivision (d)(4) did not authorize the 2011 set-aside order.

Nor was the order a proper exercise of the trial court's authority to issue a nunc pro tunc order. " 'A nunc pro tunc order or judgment is one entered as of a time prior to the actual entry, so that it is treated as effective at the earlier date.' " (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 851.) Trial courts have the authority to enter nunc pro tunc orders to address *clerical* errors, but not *judicial* errors. (*People v. Kim* (2012) 212 Cal.App.4th 117, 124 (*Kim*).) "The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' " (*In re Candelario* (1970) 3 Cal.3d 702, 705; see *Kim*, at pp. 123-124; *People v. Borja* (2002) 95 Cal.App.4th 481, 485 (*Borja*) ["a nunc pro tunc order is generally limited to correcting clerical errors; ' "a nunc pro tunc order cannot declare that something was done which was not done." ' "].)

The 2011 set-aside order did not seek to correct a clerical error with respect to Sannmann's original guilty plea. That is, the order was not based on a finding that the court in 1997 erroneously recorded that Sannmann pleaded guilty to felony robbery when, in fact, he had pleaded guilty to something else. Rather, the order sought to retroactively modify the record to reflect a different plea than Sannmann entered and the court correctly recorded. Our court has held this is not a proper use of a nunc pro tunc order. (*Borja*, *supra*, 95 Cal.App.4th at p. 485 [order retroactively modifying sentence from 365 days to 364 days to avoid adverse immigration consequences did "not involve a clerical [error]," but rather, "sought imposition of a sentence different from the one that had been intended, imposed and served."].) Thus, the 2011 set-aside order was not a valid exercise of the court's inherent authority to correct clerical errors with nunc pro tunc orders.

In sum, neither of the authorities cited in the 2011 set-aside order authorized the relief it granted.

Apart from the language of the 2011 set-aside order, Sannmann contends the order nonetheless is valid because it implemented the terms of his 1997 plea agreement. Specifically, Sannmann asserts "it was the intent of the parties at the time of the plea that [he would] be able to 'earn' his misdemeanor" "through exemplary conduct in his life, both while on probation and once he was no longer supervised." This contention fails for two reasons.

First, Sannmann's assertions about the terms of his 1997 plea agreement are not in the appellate record. "An appellate court's review is limited to consideration of the

10

matters contained in the appellate record." (*People v. Neilson* (2007) 154 Cal.App.4th 1529, 1534.)

Second, even if Sannmann's assertion were factually supported, it is legally untenable. "[A] trial court lacks statutory authority to accept a negotiated plea which would 'reduce' a 'straight felony' . . . to a misdemeanor upon successful completion of probation." (*People v. Beebe* (1989) 216 Cal.App.3d 927, 930.) This holds true whether the "reduction" is characterized as such under section 17, subdivision (b) (which, as discussed above, applies only to wobblers), or—as Sannmann argues is the case here—as allowing the withdrawal of the original plea and entry of a new plea. (*Beebe*, at p. 931 [construing a plea agreement as "entitl[ing] [the] defendant, upon successful completion of his probation, to withdraw his . . . plea . . . and enter a new plea . . . is not authorized by statute"].)

Sannmann also cites *People v. Tidwell* (2016) 246 Cal.App.4th 212 (*Tidwell*) and *Meyer v. Superior Court* (1966) 247 Cal.App.2d 133 (*Meyer*) to support the general proposition that the granting of relief under section 1203.4—which dismisses the accusatory pleading—does not preclude a defendant from subsequently obtaining further appropriate relief. In *Tidwell*, for example, the court held that the defendant's prior relief under section 1203.4 did not preclude the subsequent redesignation of his dismissed felony as a misdemeanor under Proposition 47. (*Tidwell*, at p. 215.) And in *Meyer*, the court held that the defendant's prior relief under section 1203.4 did not preclude the subsequent reduction of his dismissed wobbler offense to a misdemeanor under section 17. (*Meyer*, at p. 140.)

11

*Tidwell* and *Meyer* do not aid Sannmann because the post-section 1203.4 relief awarded in those cases was authorized by specific statutes. (*Tidwell*, *supra*, 246 Cal.App.4th at p. 216 [discussing § 1170.18]; *Meyer*, *supra*, 247 Cal.App.2d at p. 140 [discussing § 17].) Sannmann, by contrast, has identified no statute authorizing the relief the 2011 set-aside order provided. (See *Mendez*, *supra*, 234 Cal.App.3d at p. 1778 ["entitlement to postconviction relief" from "a final judgment of conviction . . . is governed by statute."].)

Because the 2011 set-aside order was not authorized by law, it "was not only improper but also void because it was an act in excess of jurisdiction." (*Kim*, *supra*, 212 Cal.App.4th at p. 124 [order dismissing conviction in the interests of justice under section 1385 to avoid adverse immigration consequences was void where it was entered 12 years after the defendant had completed his prison sentence and case was no longer active].) Thus, the trial court erred by relying on the order to enter judgment in Sannmann's favor.

Sannmann implicitly invokes the estoppel doctrine by arguing the DOJ "should be precluded from now attempting to appeal" the 2011 set-aside order because he promptly notified the DOJ of the order and the DOJ did not timely appeal. He maintains that failing to enforce the 2011 set-aside order would prejudice him by depriving him of the benefit of his 1997 plea bargain that "all his rights [would] be restored if he complied with all the terms of his probation." We are not persuaded.

*Mendez*, *supra*, 234 Cal.App.3d 1773, which both parties cite in their briefing, is instructive. There, the trial court entered a stipulated—but unauthorized—order vacating the defendant's straight-felony conviction for robbery and entering a new guilty plea to

12

misdemeanor grand theft. (*Id.* at p. 1776.) Although the district attorney (representing the People in the trial court) had stipulated to the order, the appellate court found the Attorney General (representing the People on appeal) was not estopped from later challenging the order. (*Id.* at pp. 1782-1783.) Although the court recognized that "[t]he People are ordinarily bound by their stipulations . . . regardless of whether counsel was the Attorney General or the district attorney," the court found this factor was "not determinative" of the estoppel issue. (*Id.* at p. 1783.)

Instead, the *Mendez* court focused " 'on the importance of the irregularity not only to the parties but to the functioning of the courts and . . .other considerations of public policy[,]' " as well as whether " 'allowance of a deviation would lead to confusion in the processing of other cases by other litigants. [Citation.]' " (*Mendez*, *supra*, 234 Cal.App.3d at pp. 1782-1783.) Considering these factors, the court found "it would be inappropriate to hold the People to a stipulation entered into by the district attorney under a significant misapprehension of the law, and which authorizes privileges exceeding those granted by the Legislature or the Governor's pardon, and not available to any other similarly situated person." (*Id.* at p. 1784.)

Likewise, here, it would be inappropriate to find the DOJ estopped from seeking to avoid further enforcement of the unauthorized 2011 set-aside order. Although Sannmann promptly notified one division of the DOJ of the 2011 set-aside order, his notice gave no indication he contended the order restored his right to own or possess firearms. In that vein, the order contravenes the legislative intent expressed in section 1203.4 that defendants convicted of felonies—even those who have performed admirably

13

on probation and have had their convictions dismissed—shall not have their right to own or possess firearms restored.  (*Mendez*, *supra*, 234 Cal.App.3d at p. 1784; *Frawley*, *supra*, 82 Cal.App.4th at p. 797.)  The order, thus, violates " 'considerations of public policy' " (*Mendez*, at p. 1782) and "authorizes privileges [to Sannmann] . . . not available to any other similarly situated person" (*id.* at p. 1784).  "To permit a court, years after a person has pleaded guilty and the term has been served, to obtain a retroactive order altering the record in a manner so that the conviction could not be later used, violates th[e] Legislature's clear intent [under section 1203.4] . . . that prior convictions be available for future use." (*Borja*, *supra*, 95 Cal.App.4th at p. 487.)

These public policy considerations outweigh any countervailing reliance interests Sannmann may claim in the 1997 plea agreement.  First, as noted, Sannmann's factual assertions regarding the terms of the plea are not supported by the record.  Second, Sannmann's reliance was unreasonable because the trial court was not authorized to accept a plea that would allow the subsequent reduction of a straight felony to a misdemeanor.

In short, the superior court's 2011 set-aside order was not a proper basis on which to award Sannmann the mandamus relief sought in this action.

14

DISPOSITION

The judgment is reversed.  The parties to bear their own costs on appeal.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.

15

Filed 4/9/20

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FREDERIC CARL SANNMANN, | D075600 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2018-00003358-CU-WM-CTL) |
| DEPARTMENT OF JUSTICE, | |
| Defendant and Appellant. | ORDER GRANTING REQUEST FOR PUBLICATION |

THE COURT:

The opinion in this case filed March 20, 2020, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

McCONNELL, P. J.

Copies to:  All parties