NICHOLSON, J.
*1233 Defendant Demetrius Wayne Mays and several of his relatives went with Charles Williams to confront Marcel Hatch, who had previously beaten Williams. When the group arrived, Williams shot and killed Hatch. A jury convicted defendant of voluntary manslaughter, with an enhancement that a principal was armed, and the trial court sentenced him to 12 years in state prison. On appeal, defendant contends that the trial court improperly ordered him to pay restitution to the estate of the victim's mother for the victim's funeral and burial expenses paid by the mother before her *1234 death. We conclude the restitution order was proper because (1) the victim's mother was, herself, a victim under the restitution statute and (2) the funeral and burial expenses were incurred before she died.[1] *799 BACKGROUND
Our resolution of defendant's contentions on appeal does not require a detailed recitation of the facts.
Defendant's sister Candence worked as a prostitute. Charles Williams was her pimp and boyfriend. Hatch, the victim, also was a pimp, and Ashanti Lewis was a prostitute who worked for him. Candence and Lewis competed for "dates" at the Econo Lodge on Auburn Boulevard in Sacramento.
On May 7, 2010, Williams hassled Lewis at the Econo Lodge. The same day, Hatch yelled at and spat on Candence. Hatch also fired several rounds in the air near Candence. Williams confronted Hatch, and Hatch beat up Williams. Hatch also stole some items from Williams. Williams was unconscious for a few minutes. After he regained consciousness, he got into his car and eventually drove away.
The next day, May 8, Candence and Williams went to the apartment of defendant's parents. Williams's face was swollen and distorted. Defendant was also at the apartment, and Candence told him that Hatch spit on her and hit her.
Candence asked defendant to talk to Hatch. Defendant and some of his siblings went with Williams in a black SUV to Econo Lodge. Lewis was there, but not Hatch.
Defendant texted a friend about obtaining a gun but was unsuccessful. Defendant's father had a Saiga rifle, similar to an AK-47.
That evening, the black SUV made a second trip to Econo Lodge. Defendant's sister Brandy drove, with defendant's brother Lorenzo in the *1235 front seat. Although there was some disagreement in the testimony about who sat where in the rest of the vehicle, defendant was also in the vehicle, along with Williams and defendant's brother Kenyatta. Defendant carried a jacket out from his parents' apartment and placed it on the floor or seat of the SUV.
At the Econo Lodge, defendant and Williams got out of the SUV. Defendant testified that, as he walked toward Hatch, he thought he saw something chrome under Hatch's shirt. Williams had the Saiga rifle from defendant's parents' apartment. Hatch ran, but Williams gave chase and shot at Hatch, inflicting wounds that eventually resulted in Hatch's death.
The group went back to the parents' apartment, and defendant's father called the police to report that the rifle had been stolen. Defendant's parents told him to get rid of the rifle, so he took it, covering it with his jacket, and disposed of it in a river near Roseville.
Defendant was charged with murder, but a jury found him not guilty of murder and guilty of voluntary manslaughter. ( Pen. Code, § 192, subd. (a).) The jury also found true the allegation that a principal was armed with firearm. ( Pen. Code, § 12022, subd. (a)(1).)
The trial court imposed the upper term of 11 years for voluntary manslaughter *800 with a consecutive one-year term for the firearm enhancement.
DISCUSSION
I
Victim Restitution
In defendant's probation report, the probation officer wrote, "Restitution is being recommended in the amount of $9,130.00 payable to Carolyn P. for the cost of the funeral and burial expenses ...." In handwriting, someone interlineated that the payment was to be to "the estate of" Carolyn P. The probation report noted that (1) Carolyn P. was Hatch's mother; (2) she was severely affected by Hatch's death; (3) she constantly pictured him lying on the ground bleeding; and (4) she cried every day that he was buried in the " 'cold, hard ground.' "
At the sentencing hearing, the prosecutor asked the court to make restitution for Hatch's funeral and burial expenses payable to Carolyn P.'s estate, as she had passed away. Defense counsel said, "This is an issue I have never had come up in terms of restitution survivable to an estate. So for the record I *1236 would object. I have no idea what the law is." The trial court ordered "restitution to the estate of Carolyn P[.] in the amount of $9,130."
In his opening brief on appeal, defendant contends that the trial court improperly ordered him to pay restitution to Hatch's mother for Hatch's funeral expenses because Hatch died before those expenses were incurred, citing People v. Runyan (2012) 54 Cal.4th 849, 143 Cal.Rptr.3d 674, 279 P.3d 1143 ( Runyan ). The Attorney General attempted to concede the issue, noting that Hatch died before the funeral and burial expenses were incurred.
In Runyan , the defendant, while driving drunk, caused an accident that killed another driver. ( Runyan, supra , 54 Cal.4th at p. 853, 143 Cal.Rptr.3d 674, 279 P.3d 1143.) At sentencing, the court ordered the defendant to pay restitution to the victim's estate for various expenses, including funeral and burial expenses. ( Id . at pp. 854-855, 143 Cal.Rptr.3d 674, 279 P.3d 1143.) On review, the California Supreme Court held that the restitution award to the victim's estate for expenses that arose after the victim died was not authorized under Penal Code section 1202.4 because (1) the victim did not personally incur the expenses and (2) the estate of the victim was not, itself, a victim under the statute. ( Runyan, supra , at pp. 857-859, 143 Cal.Rptr.3d 674, 279 P.3d 1143.)
We requested supplemental briefing and asked the parties to consider, among other things, whether the restitution order was proper because Hatch's mother was the victim for purposes of restitution.[2]
*801 In his supplemental brief, defendant acknowledges that Hatch's mother was a victim under Penal Code section 1202.4, subdivision (k)(1), which provides that, for the purposes of restitution under that section, "[t]he immediate surviving family of the actual victim" is also a "victim." He also acknowledges that Hatch's mother was alive when Hatch's funeral and burial expenses were incurred and that, because she was alive when Hatch's funeral and burial expenses were incurred, the award of restitution to the estate of *1237 Hatch's mother was not barred by the holding in Runyan that restitution cannot be ordered for expenses incurred by a victim's estate after the victim's death. He asserts, however, that there is no evidence in the record that Hatch's mother personally incurred those funeral and burial expenses. Finally, defendant contends that he did not forfeit his restitution contentions by failing to make an adequate objection in the trial court because whether restitution was available was an issue of law, not of fact. In the alternative, defendant contends that any forfeiture for failure to make an adequate objection constituted constitutionally ineffective assistance of counsel. We address each of these issues.
First, Runyan does not bar restitution on the ground that the funeral and burial expenses were incurred after Hatch's death, as defendant acknowledges in his supplemental brief, if those expenses were incurred by Hatch's mother, who was a victim under Penal Code section 1202.4, subdivision (k)(1). But defendant asserts that, because there is no evidence in the record that Hatch's mother personally incurred those expenses, we cannot sustain the restitution award to her estate. He argues: "For all we know, someone other than Carolyn P. paid for these expenses, and she was simply trying to recoup the other person's outlay at sentencing." Defendant's supplemental brief on appeal is the first time he has raised this issue of who personally incurred Hatch's funeral and burial expenses, as he raised it neither in the trial court nor in his opening or reply brief on appeal.
It is too late for defendant to contend that the restitution order was improper on the ground that the prosecution did not present evidence that Hatch's mother personally incurred the funeral and burial expenses associated with Hatch's death because: (1) this is not a question of law and (2) defendant could have, but did not, challenge the factual basis for the restitution order in the trial court.
Defendant argues in this supplemental brief that it was not necessary to object to the factual basis of the restitution order in the trial court because the issue raised on appeal is one of law. (See Green v. Superior Court (1985) 40 Cal.3d 126, 138, 219 Cal.Rptr. 186, 707 P.2d 248 [new theory may be raised on appeal if evidence relevant to theory fully developed in trial court].) He writes: "Here the issue is purely one of law: whether any evidence was placed on the record that showed the victim Carolyn P. had personally incurred the expenses at issue." To the contrary, the issue is factual, and the record concerning this factual issue was not fully developed in the trial court. A defendant wishing to argue on appeal that there is no factual basis for a restitution order must object on that ground in the trial court to preserve the issue for appeal. ( People v. Anderson (2010) 50 Cal.4th 19, 26, fn. 6, 112 Cal.Rptr.3d 685, 235 P.3d 11 ["Defendant ...
*802 waived a claim of error as to *1238 the amount of restitution by failing to object on that ground in the trial court"]; People v. Brasure (2008) 42 Cal.4th 1037, 1075, 71 Cal.Rptr.3d 675, 175 P.3d 632 ["[B]y his failure to object, defendant forfeited any claim that the order was merely unwarranted by the evidence, as distinct from being unauthorized by statute"].) Since defendant did not object in the trial court on this ground, he forfeited consideration of the issue on appeal.
Defendant contends that, if the failure to object in the trial court resulted in forfeiture, his trial attorney was constitutionally deficient for having failed to object. This approach is fruitless because defendant cannot show prejudice. He cannot establish that Hatch's mother did not incur the funeral and burial expenses.
To prevail on his ineffective assistance claim, defendant must show: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." ( Strickland v. Washington (1984) 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 ( Strickland ).) "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies .... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." ( Id . at p. 697, 104 S.Ct. 2052.) Because, on this record, we can only speculate as to (1) whether Hatch's mother personally incurred the funeral and burial expenses or (2) whether an objection to the factual basis of the restitution order would have benefitted defendant, there is no prejudice shown. Therefore, defendant's ineffective assistance of counsel argument is without merit.
II-VII**
DISPOSITION
The judgment is affirmed.
We concur:
RAYE, P.J.
BUTZ, J.

Defendant's other contentions on appeal are also without merit. He contends: (1) the trial court's instruction to the jury using CALCRIM No. 373 improperly diverted the jury's attention away from Williams's responsibility for the killing; (2) the trial court erred by not giving an instruction on proximate causation; (3) the trial court improperly gave a consciousness of guilt instruction using CALCRIM No. 371 where the suppression of evidence was not intended to conceal defendant's participation in the crime; (4) the trial court improperly answered the jury's question about how aiding and abetting applies to voluntary manslaughter; (5) the trial court abused its discretion by allowing speculative testimony and argumentative questions; and (6) the trial court erred by admitting hearsay evidence.

Specifically, we asked the parties to answer the following questions:
"1. Was Carolyn P. a victim of defendant's crime? Discuss Pen. Code, § 1202.4, subd. (k)(1) as well as any other pertinent authority.
"2. Assuming for the purpose of argument that Carolyn P. was a victim of defendant's crime, is there sufficient evidence in the record that Carolyn P. was alive when the funeral and burial expenses for her son were incurred?
"3. Assuming for the purpose of argument that Carolyn P. was a victim of defendant's crime and that she was alive when the funeral and burial expenses for her son were incurred, was the trial court's restitution order payable to the estate of Carolyn P. appropriate? Discuss Runyan, supra, 54 Cal.4th at p. 857 [143 Cal.Rptr.3d 674, 279 P.3d 1143] ['When the actual victim of a crime has died, the estate, acting in the decedent's stead, steps into the decedent's shoes to collect restitution owed to the decedent, but which the decedent cannot personally receive because of his or her death'], as well as any other pertinent authority.
"4. Did defendant forfeit consideration of the restitution issue by failing to object in the trial court?"

See footnote *, ante.